# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Arlander Keys | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 771 | **DATE** | 5/8/2002 |
| **CASE TITLE** | Ellen Brasel vs. Larry Massanari | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Memorandum Opinion and Order entered. Plaintiff's Motion for Summary Judgment is granted in part; Defendant's Motion for Summary Judgment is denied; case is remanded to the Commissioner for further proceedings consistent with this Opinion. *AK*

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | 2 number of notices | **Document Number** |
| ✓ | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | MAY 09 2002 date docketed | |
| | Docketing to mail notices. | | 23 |
| ✓ | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 5/8/2002 date mailed notice | |

FT/recy courtroom deputy's initials

CLERK, U.S. DISTRICT COURT

02 MAY -8 PM 2: 17

Date/time received in central Clerk's Office

mailing deputy initials

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ELLEN J. BRASEL, | ) | Case No. 01 C 771 |
| Plaintiff, | ) | |
| v. | ) | Magistrate Judge |
| | ) | Arlander Keys |
| LARRY G. MASSANARI, Acting Commissioner of Social Security, | ) | |
| Defendant. | ) | |



## MEMORANDUM OPINION AND ORDER

Plaintiff, Elaine J. Brasel moves this Court for summary judgment, pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, reversing the final decision of the Commissioner of Social Security, which denied her application for Disability Insurance Benefits. *See* 42 U.S.C. §§ 405(g), 1383(c)(3) (West 2002.) In the alternative, Plaintiff seeks an order remanding the case to the Commissioner for further inquiry and evidence. The Commissioner has filed a Cross-Motion for Summary Judgment in his favor. For the reasons set forth below, the Commissioner's Motion is denied and Plaintiff's Motion is granted in part. Specifically, this cause is remanded to the Commissioner for further proceedings consistent with this Opinion.

1



## PROCEDURAL HISTORY

In 1988, Plaintiff filed an application for disability insurance benefits ("DIB"), claiming that vision problems rendered her disabled.(R. at 45.) This claim was denied on April 15, 1988. (R. at 30.) Plaintiff filed a second application for DIB on January 28, 1997, claiming that vision problems and severe back pain rendered her disabled and alleging a disability onset date of December 31, 1985.[1] (R. at 84.) Plaintiff last met the disability insured status requirements on December 31, 1990. (R. at 17.) Therefore, Plaintiff must establish that she was disabled as of that date.

The second claim for DIB was denied initially and on reconsideration. (R. at 70-72, 75.) Plaintiff requested and received a hearing before Administrative Law Judge Mark Anderson ("ALJ") on August 18, 1998. (R. at 25, 78.) Following the hearing, the ALJ issued an unfavorable decision, finding the Plaintiff not disabled at any time through September 3, 1998. (R. at 20.) Plaintiff then filed a request for review of the ALJ's decision. (R. at 7.) The Appeals Council denied the request on

---

[1]Initially Plaintiff alleged an onset date of December 31, 1985. Realizing that the res judicata impact of the Commissioner's decision barred her from seeking disability benefits as of that date, Plaintiff amended her application to reflect a new onset date of June, 23, 1989, after the res judicata period of her previous claim. (R. at 65.)

December 6, 2000, and the ALJ's decision stands as the final
decision of the Commissioner. (Id.)

## STATEMENT OF FACTS

### A. Evidence Presented At Plaintiff's Hearing.

#### 1. Plaintiff's Testimony

At the hearing, Plaintiff testified that she was born on
June 23, 1939, and had a high school education. (R. at 32.) She
lives in a mobile home in Aurora, Illinois with her husband of
eleven years. (R. at 31.)

Plaintiff's work history began with Jewel Food Stores, where
she worked as a checker from 1979 through 1981. (R. at 33-34.)
While on the job, in the early part of 1981, Plaintiff injured
her back when she picked up a frozen turkey. (R. at 35.) The
injury forced Plaintiff to take medical leave for approximately
nine months, and eventually forced her to quit her job. (R. at
34.)

In 1982, Plaintiff was hired by attorney Raymond T. Brasel
to do light housekeeping and dishes in his home office. (R. at
32.) Plaintiff gradually began to do light typing, filing
papers, and answering phones for Mr. Brasel. (Id.) During this
time, Plaintiff began experiencing vision problems in both eyes.
(R. at 39, 47.) By 1984, Plaintiff was legally blind in her left
eye. (R. at 46-47, 169.)

3

In addition to her vision problems, Plaintiff's general physical condition was deteriorating. Initially, Plaintiff worked three to four hours a day for Mr. Brasel, but eventually, Plaintiff's worsening medical condition forced her to reduce the amount of time she worked and diminished her duties to answering the phone. (R. at 33, 46.) Plaintiff was unable to research, draft letters, take dictation, or perform a set amount of work in a day. (R. at 61.) Plaintiff testified that, in 1990, she could stand for approximately thirty minutes, sit for extended periods of time, and lift up to twenty pounds. (R. at 48.) While she was able to work in the yard, she was unable to do most household chores. Nevertheless, Plaintiff continued working for Mr. Brasel, as the two had developed a close, personal relationship. In 1991, Plaintiff and Mr. Brasel were married. (R. at 31.)

Plaintiff's condition continued to deteriorate. By 1994, Plaintiff could only lift the weight of a dish and could not bend over or squat to pick something up. (R. at 40-41.) One year later, Plaintiff's pain was more severe. (R. at 36.) In 1995, Plaintiff began using a wheelchair when she needed to go further than thirty to forty feet, because she would get too exhausted using her walker. (R. at 39, 47.) Plaintiff's impaired vision, combined with the pain she experienced when sitting for prolonged periods, forced her to stop typing. (R. at 46.) Plaintiff stopped working for Mr. Brasel in 1996, when her vision

4

impairments and back pain made it impossible for her to do any work. (R. at 43-44.)  By 1997, Plaintiff was taking a combination of hydrocodone and over the counter pain medication to help manage the pain. (R. at 37, 46, 161.)

As of the hearing date, Plaintiff's activities were limited to showering, washing dishes, and doing laundry because of her visual impairment, pain, and fatigue.(R. at 39.)  Plaintiff uses a stool for these activities because she is so weak. (Id.)  She can only walk thirty to forty feet, and then only with assistance.  (R. at 36.)  Plaintiff can stand for only one minute, and sit for three to four hours at a time with the aid of a pillow. (R. at 39.)

Plaintiff's vision problems are so severe that she can not drive.  She requires a magnifying glass to read a newspaper, and is unable to focus on the television screen. (R. at 38.)  In addition, Plaintiff can not type because she can not see the letters well enough to check her work. (Id.)

Plaintiff is aware that, at sometime in the past few years, she was diagnosed with multiple sclerosis.  (R. at 43.) Plaintiff is now in constant pain. (R. at 36.)  She describes her back pain as throbbing, and compares her leg pain to "a toothache."  (Id.)  She testified that her pain and pain medication affect her memory and ability to concentrate. (R. at 34, 37.)

### 2. Raymond T. Brasel's Testimony

At the hearing, witness Raymond T. Brasel testified that he is seventy-nine years old, has known Plaintiff for twenty-one years, and has been married to her for the last eleven years. (R. at 49.) Mr. Brasel is a lawyer and first met Plaintiff as a client in 1980. (Id.) In 1982, when Plaintiff was looking for work, Mr. Brasel hired her to do general housekeeping on a part-time basis. (R. at 49-50.)

Approximately one year later, Mr. Brasel and Plaintiff began dating. (R. at 51.) Around this time, Plaintiff tried to assist Mr. Brasel with his law practice, but her vision problems prevented her from being of any real assistance. (R. at 50-51.) Mr Brasel testified that he nevertheless continued to employ her because he had become attached to her and enjoyed her company. (Id.)

Mr. Brasel was aware of Plaintiff's back pain in 1983 or 1984. At that time, the couple bowled together, and Mr. Brasel frequently saw Plaintiff in pain after throwing the ball. Occasionally, her pain was so severe that Plaintiff would go to the chiropractor the day after bowling. (R. at 54.)

Mr. Brasel opined that Plaintiff was limited in her vision as far back as 1982 or 1983, and has been on a continuous progression downhill. (R. at 53, 55.) However, around 1984, Plaintiff's vision improved slightly for a short time. (R. at

6

50.) During this time, Plaintiff assisted with minor office related activities, but typing was still difficult. (Id.) Although Mr. Brasel asked Plaintiff to type for him, he spent a significant amount of time correcting her mistakes. (Id.)

Mr. Brasel needed a secretary for eight hours a day, but he knew Plaintiff was not up to the task. (R. at 53, 55.) Mr. Brasel continued to pay Plaintiff until 1995, but testified that he was paying her as much for her company as for work she had done. (R. at 52.) He recalled telling Plaintiff early in their relationship that, if she had come looking for a job at that point, he would not have hired her. (Id.)

### 3. Vocational Expert's Testimony

Mr. Schweihs, the vocational expert ("VE"), testified that Plaintiff had no significant past work. (R. at 60.) Mr. Schweihs classified Plaintiff's work as between unskilled and the low end of semiskilled, and predominately sedentary. (R. at 61.) Any transferrable skills she may have would be at the low end of semiskilled, related to filing, typing, and bookkeeping. (R. at 61-62.)

The ALJ proposed a hypothetical to Mr. Schweihs describing a person of the same age, education, and work experience as the Plaintiff at the time she was claiming disability onset. (R. at 62.) The hypothetical assumed the person could sit with no exertional limits; stand for one half hour at a time for at least

six out of eight hours; could lift no more than twenty pounds at a time; and was blind in one eye. (Id.) Mr. Schweihs testified that the hypothetical person could perform general office clerk positions. (Id.) Mr. Schweihs estimated that nine to ten thousand jobs of this type are available within the metropolitan Chicago area. (R. at 63.)

The ALJ then proposed a second hypothetical to Mr. Schweihs, with additional physical limitations. (Id.) This hypothetical assumed that the individual could sit for only four hours at a time, stand for only one minute at a time, walk no more than thirty to forty feet without assistance, not bend or stoop, lift only ten pounds occasionally, and is blind in one eye. (Id.) Mr. Schweihs testified that the jobs available to that person would be further narrowed, but opined that there would be three thousand general office clerk positions available to that individual. (R. at 63-64.)

The ALJ proposed a final hypothetical, adding that, nonexertionally, such an individual would also suffer from fatigue and would require breaks longer than the standard fifteen minute break, was somewhat limited in memory, and experienced mild to moderate pain to a degree that affected the individual's ability to concentrate. (R. at 64.) The VE testified that no jobs would be available to that individual. (Id.)

### 4. Medical Evidence

Despite Plaintiff's long and complicated medical history, she submitted to the ALJ only limited medical records for the period prior to 1990. The Court will discuss these records in full.

**Dr. Lacy H. Cook, Jr., D.C.– Treating Chiropractor.**

Dr. Cook treated Plaintiff from May 1983 through September 1985 for lower back and neck pain. (R. at 205.) The doctor noted that Plaintiff's lower back pain was improved at times throughout the treatment. (Id.) Dr. Cook also diagnosed her with right shoulder bursitis, for which she prescribed ultrasound and exercises. (Id.) By September 1985, Plaintiff's shoulder had improved and Plaintiff stopped treatment. (Id.)

Dr. Cook treated Plaintiff again from January 25, 1995 through September 1995 for lower back and right leg pain. (R. at 182-197, 205.) During Plaintiff's first visit in 1995, Dr. Cook noted that Plaintiff had great difficulty walking because of the pain in her right leg and abnormal ataxic gait and posture. ( R. at 197.) Dr. Cook prescribed various treatments to try to relieve Plaintiff's pain. Over a nine month period, Plaintiff was treated with hot packs and ice packs; spinal adjustment; flexion distraction; ultrasound; and electrical and needle acupuncture. (R. at 182-197.) In August 1995, the doctor noted that Plaintiff was moving better and not in tears from the pain.

(R. at 183.)  In September 1995, Dr. Cook recommended that
Plaintiff rent a TENS unit, which finally helped control some of
her pain. (R. at 187.)  In 1995, Dr. Cook referred Plaintiff to
Dr. Andrew Ta, for a neurological evaluation in reference to her
back pain.

**Dr. Jefferey Haag, M.D.- Treating Ophthamologist.**

Plaintiff began seeing Dr. Haag, an Ophthamologist, in
October 1984.  The doctor reviewed Plaintiff's history of vision
problems, which began in January 1973, when she contracted the
London Flu. (R. at 173.)  The doctor found that a past infection
had caused optic neuritis, which resulted in optic atrophy in
both eyes. (R. at 172.)  Dr. Haag saw the Plaintiff again in 1996
on a referral from Dr. Foody. (R. at 169.)  He noted that
Plaintiff's visual acuity had decreased since 1984, she had
damaged optic nerves, and optic nerve atrophy. (R. at 169.)   In
May 1996, Dr. Haag referred Plaintiff to Dr. Andrew Ta to
evaluate her for multiple sclerosis. (R. 168.)

**Dr. Andrew D. Ta, D.O.- Treating Neurologist.**

On July 25, 1995, Dr. Ta examined Plaintiff on a referral
from Dr. Cook.  During the examination, Dr. Ta ordered a lumbar
scan MRI examination. (R. at 192.)  The MRI report, dated August
7, 1995, revealed mildly decreased signal intensity within the
L4-5 and L5-S1 intervertebral discs, and mild to moderate
degenerative change in the facet joints at the L4-5 level. (R. at

10

164) The lumbar scan showed no significant narrowing of the spinal canal or evidence of nerve root impingement. (Id.)

Dr. Ta interpreted the results of the MRI scan and Plaintiff's neurological examination as benign, with no surgical lesion. (R. at 191.) He recommended that Plaintiff continue chiropractic treatment with Dr. Cook and non-steroidal anti-inflammatory medication. (Id.) In addition, Dr. Ta recommended that Plaintiff continue on the imipramine medication she was taking, because it would help her with anxiety and her bladder problem. (Id.)

On June 6, 1996, Dr. Ta examined Plaintiff for multiple sclerosis on a referral from Dr. Haag. During this visit, Dr. Ta reported that Plaintiff had a long, complicated neurological history dating back to 1984, when she first experienced problems with vision loss in her left eye. (R. at 165.) At that time, the vision loss was assumed to be post-infectious optic nerve neuritis. (Id.) Dr. Ta noted that Plaintiff has had no major exacerbation of this problem, but had experienced some recent worsening of her vision. (Id.)

The examination in 1996 revealed a visual acuity of 20/80 on the right eye and 4/200 on the left eye. (Id.) Dr. Ta observed bilateral optic nerve atrophy and a prominent bilateral internuclear ophthalmoplegia. He also noted that Plaintiff walked with mild ataxia and was unable to walk in tandem. (Id.)

Dr. Ta concluded that Plaintiff is affected by bilateral optic neuritis and her ocular motility indicates a possible brain stem lesion. He determined that Plaintiff most likely has demyelinating disease (a/k/a. multiple sclerosis). (Id.) Dr. Ta noted that Plaintiff decided to proceed with IV corticosteroid treatment. (Id.)

**Dr. Foody - Treating Ophthamologist.**

Dr. Foody, at the Aurora eye clinic, where Plaintiff had been treated since the early 1980s, prepared a report on February 27, 1997 (R. at 98, 176.) Dr. Foody diagnosed Plaintiff with optic nerve atrophy and neuritis in both eyes. He noted a history of demyelinating disease and febrile illness, with the onset of her pathology as March 1985. (Id.) His diagnosis for both eyes was guarded. (Id.) Plaintiff's visual field was abnormal, with bilateral scotoma. (Id.) Dr. Foody indicated that employability would not be markedly improved by treatment or appliance. (R. at 177.)

**Dr. Richard Kammenzind, M.D.- Treating Physical Consultative Evaluator.**

Dr. Kammenzind saw Plaintiff for a consultative disability examination and reported to the Agency on March 25, 1997. (R. at 198.) The doctor had difficulty testing her range of motion because of Plaintiff's poor balance and weakness. (R. at 200.) He noted that she walks with a cane, is slightly ataxic and cannot walk in tandem. (Id.) Dr. Kammenzind concluded that

12

Plaintiff's history and physical findings were consistent with multiple sclerosis, as evidenced by optic neuritis, physical findings suggestive of a brain stem lesion, and weakness in her right leg. (Id.)  Dr. Kammenzind reported that Plaintiff was not able to walk the one hundred feet down his office hall without the use of a cane. (Id.)

### Dr. Gwendolyn I. White, M.D.– Agency Non-Examining Medical Consultant.

Dr. White, a retired pediatrician (R. at 160), performed Plaintiff's residual functional capacity ("RFC") assessment on April 4, 1997 to determine her RFC at the date last insured, December 1990. (R. at 146.)  Dr. White checked the boxes "None established"' for exertional limitations, postural limitations, manipulative limitations, and communicative limitations.  The report contained no evidence or documentation to support her determinations. (R. at 146-153.)  In the exertional limitations category, the evidence Dr. White lists to support her finding relates only to Plaintiff's vision problems, with no mention of evidence that would lead to an exertional determination. (R. at 147.)

Dr. White marked the visual limitations box on the report, and noted that Plaintiff's vision in her right eye was 20/40, and 20/200 in her left eye. (R. at 149.)  The doctor also noted an environmental limitation for machinery and heights due to Plaintiff's vision loss. (R. at 150.)  The only notes and

comments written by Dr. White refer to Plaintiff's vision limitation. (R. at 152.)

### Dr. Cha, M.D.– Pain Management Doctor.

Plaintiff was undergoing pain management therapy at the Century Pain Management Center from July 1997 through February 1998. (R. at 208-214.) Plaintiff was able to get some pain relief with prescription medications, but still had significant pain. (R. at 210-214.)

## B. THE ALJ'S DECISION.

On September 3, 1998, the ALJ issued his decision, finding the Plaintiff not disabled. (R. at 20.)  The ALJ reviewed Plaintiff's testimony regarding her personal, work, and medical history, as well as Mr. Brasel's and the VE's testimony before turning to the medical evidence. (R. at 16-17.)

The ALJ determined that, at all times through December 31, 1990, her date last insured, Plaintiff retained the RFC to perform a full range of light work. (R. at 18-19.)  The ALJ found that Plaintiff could stand thirty minutes at a time for up to six hours in a day, lift and carry up to twenty pounds, and had no vision in her left eye. (R. at 18.)

The ALJ concluded that Plaintiff did not have past relevant work, and relied on the VE's testimony to determine if a significant number of jobs existed in the national economy that the Plaintiff could perform. (R. at 19.)  The ALJ found that,

14

given Plaintiff's background and the fact that her RFC for light work was reduced by her inability to do work requiring fine visual acuity, Plaintiff could qualify for nine to ten thousand general office clerk jobs in the Chicago metropolitan area. (Id.)

The ALJ found that the medical evidence established that Plaintiff had severe blindness in her left eye and back pain, but that she does not have an impairment or combination of impairments listed in, or medically equal to, one listed in Appendix 1, Subpart P, Regulations No. 4. (R. at 20.)

The ALJ found that Plaintiff was not disabled, as defined by the Social Security Act, at any time through the date of the decision. (Id.) The ALJ concluded that the Plaintiff now has much more severe limitations that would probably render her disabled, but her testimony and lack of medical evidence of record supports a finding of not disabled through December 1990. (R. at 19.)

## STANDARD OF REVIEW

In reviewing the ALJ's decision, the Court may not decide the facts, reweigh the evidence, or substitute its own judgment for that of the ALJ. *Herron v. Shalala,* 19 F.3d 329, 333 (7th Cir. 1994). Where conflicting evidence allows reasonable minds to differ, the responsibility for determining whether a claimant is disabled falls upon the Commissioner, not the courts. *Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990); *see also Stuckey v.*

15

*Sullivan*, 881 F.2d 506, 509 (7th Cir. 1989) (the ALJ has the authority to assess medical evidence and give greater weight to that which he finds more credible). Rather, the Court must accept findings of fact that are supported by "substantial evidence," 42 U.S.C. § 405(g), where substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Herron*, 19 F.3d at 333 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

The Court is limited to determining whether the Commissioner's final decision is supported by substantial evidence and based upon proper legal criteria. *Ehrhart v. Sec'y of Health and Human Servs.*, 969 F.2d 534, 538 (7th Cir. 1992). This does not mean that the ALJ is entitled to unlimited judicial deference, however. The ALJ must consider all relevant evidence and may not select and discuss only that evidence that favors his ultimate conclusion. *Herron*, 19 F.3d at 333. In addition to relying on substantial evidence, the ALJ must articulate his analysis at some minimal level. *See Young v. Sec'y of Health and Human Servs.*, 957 F.2d 386, 393 (7th Cir. 1992) (ALJ must articulate his reason for rejecting evidence "within reasonable limits" in order for meaningful appellate review). The ALJ must build "an accurate and logical bridge" from the evidence to his conclusion. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

Finally, although Plaintiff bears the burden of demonstrating his disability, "[i]t is a basic obligation of the ALJ to develop a full and fair record." *Thompson v. Sullivan*, 933 F.2d 581, 585 (7th Cir. 1991) (*quoting Smith v. Sec'y of HEW*, 587 F.2d 857, 860 (7th Cir. 1978)). "Failure to fulfill this obligation is 'good cause' to remand for gathering additional evidence." *Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000) (finding that, if the ALJ found the evidence before him insufficient, he should have obtained more evidence.)

## SOCIAL SECURITY REGULATIONS

The Social Security Regulations prescribe a sequential five-part test for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520 and 416.920 (2001). The ALJ must consider: (1) whether the claimant is presently unemployed; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude gainful activity; (4) whether the claimant is unable to perform his past relevant work; and (5) whether the claimant is unable to perform any other work existing in significant numbers in the national economy. *See* 20 C.F.R. §§ 404.1520 and 416.920; *see also Young*, 957 F.2d at 389. A finding of disability requires an affirmative answer at either step 3 or step 5. A negative answer at any step (other than step 3) precludes a

17

finding of disability. *Id.* The claimant bears the burden of proof at steps 1-4, but the burden shifts to the Commissioner at step 5. *Id.*

The ALJ's analysis at step 5 typically involves an evaluation of the claimant's RFC to perform a particular category of work (i.e. sedentary, light, medium, heavy, or very heavy work), in combination with an application of the Medical-Vocational Guidelines ("the Grid") to determine whether an individual of the claimant's age, education, and work experience could engage in substantial gainful activity. *See* 20 C.F.R. Part 404, Subpart P, Appendix 2. The Grid is a chart that classifies a claimant as disabled or not disabled, based on the claimant's physical capacity, age, education, and work experience. *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987). If the use of the Grid is appropriate, the Commissioner or ALJ may rely upon it for determining disability, and, in such a case, the Grid alone constitutes substantial evidence sufficient to uphold the decision of the Commissioner. *Id.*

However, where a plaintiff suffers from significant non-exertional impairments, the ALJ may not rely upon the Grid. *See* SSR 83-14. "When a plaintiff's non-exertional impairments significantly diminish his ability to work . . . the Commissioner must introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which plaintiff

can obtain and perform." *Bapp v. Bowen,* 802 F.2d 601, 603 (2d Cir. 1986).

## DISCUSSION

Plaintiff contends that the ALJ erred in concluding that she is not disabled. Specifically, Plaintiff argues that the ALJ: 1) did not have substantial evidence to conclude that Plaintiff had the RFC for a full range of light work; 2) had no medical evidence to support his finding that Plaintiff was capable of light work; 3) ignored Plaintiff's exertional limitations when concluding that Plaintiff was capable of performing "a full range of light work"; 4) ignored evidence favorable to Plaintiff and discussed only the evidence that supported ALJ's conclusion; 5) does not explain what evidence supports the exertional requirements of any of the jobs the VE purported Plaintiff could undertake; 6) posed inaccurate hypotheticals to the VE because the ALJ did not specify that the VE was required to testify to jobs existing in significant numbers on or before 1990; and 7) erred by failing to use a medical advisor to determine the disability onset date, violating the requirements of SSR 83-20.

Plaintiff's arguments have varying degrees of merit. However, the Court agrees that the ALJ did not develop a full and fair record to support his findings with substantial evidence. Specifically, the Court finds that the ALJ failed to develop the record regarding Plaintiff's exertional limitations.

## A. Plaintiff's Employability at Step 5.

Plaintiff challenges the ALJ's conclusion that Plaintiff could perform a significant number of "light work" jobs existing in the local economy. In particular, the Plaintiff argues that the hypothetical posed to the VE was inaccurate and/or incomplete.

The Seventh Circuit has determined that hypothetical questions posed to VEs must fully set forth all of the claimant's impairments that are supported by the medical evidence in the record. *Herron v. Shalala*, 19 F.3d 329, 337 (7th Cir. 1994). The hypothetical posed by the ALJ need not account for every aspect of the claimant's impairments if the information supplied to the VE is nevertheless valid and reliable. *See, e.g., Cass v. Shalala,* 8 F.3d 552, 556 (7th Cir. 1993) (finding that because the VE viewed all of the evidence prior to the hearing, "the VE's testimony constitute[d] substantial evidence . . . despite any omissions in the hypothetical." ) Accordingly, the Commissioner's decision may stand, despite the fact that the ALJ posed an inaccurate hypothetical, if the evidence shows that: 1) the plaintiff's attorney accurately supplemented the ALJ's hypothetical; 2) the ALJ's hypothetical, while not incorporating all of the plaintiff's complaints, was based upon those impairments the ALJ found were supported by the record; and 3) the VE reviewed the record prior to the hearing and was present

20

during the testimony tending to establish the omitted limitations.  *Griffith v. Barhart*, No. 00 C 7302, 2002 WL 181959, at *13 (N.D. Ill. Feb. 6, 2002).

In the instant case, Plaintiff contends that the hypothetical posed by the ALJ to the VE was inaccurate, because it was not based upon substantial evidence.  Specifically, Plaintiff argues that the ALJ failed to develop the record to support his determination of Plaintiff's functional limitations, and, therefore, his hypothetical to the VE presumed that Plaintiff was capable of performing at a level unsupported by record evidence.

The ALJ's findings must be supported by substantial evidence in order to be sustained. *See* 42 U.S.C. § 405(g); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).  To determine if substantial evidence exists to support the findings, the Court will review the entire administrative record. *Id.* (citing *Powers v. Apfel*, 207 F.3d 431, 434-35 (7th Cir. 2000)).  The Court will not assume that the ALJ considered particular evidence of record if he did not mention it in his decision. *Pappas-Sanavaitis v. Chater*, 978 F.Supp. 782, 788 (N.D. Il. 1997).  If the Court does not find that substantial evidence supports the ALJ's conclusions, the case will be remanded. *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996).

The ALJ determined that Plaintiff was capable of performing
a full range of light work. As a general rule, light work
involves lifting 20 pounds or less at a time, with frequent
lifting or carrying of objects up to 10 pounds.[2] It requires
significant walking or standing, or, if sitting most of the time,
it requires some pushing or pulling with arm or leg controls.
*See* 20 C.F.R. § 404.1567(b). Finally, to be considered capable
of performing a full range of light work, the person must have
the ability to do substantially all of these activities.
(Id.)(*Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995) (citing
*Herron v. Shalala*, 19 F.3d 329, 332 (7th Cir. 1994)).

In determining that Plaintiff was capable of light work,
the ALJ relied heavily on Plaintiff's testimony that, in 1990,
she could stand for one half hour at a time, sit for an unlimited
time and lift 20 pounds at one time. What is left unresolved by
this testimony is the total amount of time during an eight-hour
day that Plaintiff could stand, and how frequently she could lift
20 pounds.

Further complicating matters is the fact that the ALJ
repeatedly stated that he found Plaintiff's and Mr. Brasel's
testimony credible; particularly with regard to her "symptoms and

---

[2] The parties are not contending that the VE's opinion
contradicted the DOT. See *Powers v. Apfel*, 207 F.3d 431, 436
(7th Cir. 2000) (if the VE's testimony contradicts the DOT, the
ALJ can choose to rely on the expert's opinion.)

functional limitations." (R. at 18; ALJ's Opinion at 3.)  And
yet, in assessing Plaintiff's RFC, the ALJ ignored Plaintiff's
testimony indicating that she was unable to work for more than 3
or 4 hours each day, and that by 1990, she was unable to do even
housework.  Similarly, Mr. Brasel testified that his wife was
incapable of performing most office-related tasks without
substantial oversight and/or correction, and that she was unable
to work a full day.  This testimony is inconsistent with the
conclusion that Plaintiff could perform light work, and yet the
ALJ made no attempt to resolve the inconsistency.

Notably, Plaintiff's and Mr. Brasel's testimony regarding
her functional limitations, in and of itself, does not compel the
conclusion that Plaintiff was incapable of performing light work.
But it does highlight the inconsistency within the ALJ's
decision.  The ALJ had an obligation to resolve any gaps or
inconsistencies in the record evidence.  He did not fulfill his
obligation in this regard, and he did not elicit sufficient
testimony to support his finding that the Plaintiff had the
exertional ability to perform light work.

Certainly, Plaintiff's counsel could have remedied the
situation at the hearing by objecting or posing additional
questions to Plaintiff or the VE.  However, the existence of
counsel for the Plaintiff does not relieve the ALJ of his
obligation to gather enough evidence to support his conclusion.

*Shannon v. Chater,* 54 F.3d 484, 488 (8th Cir. 1995) (citing
*Onstad v. Shalala,* 999 F.2d 1232, 1234 (8th Cir. 1993)).
The ALJ must develop a full and fair record regardless of
Plaintiff's representation.

Having determined that the ALJ failed to gather substantial
evidence to support his conclusion that Plaintiff was capable of
performing light work, the Court further finds that the
hypothetical posed to the VE was similarly deficient. Moreover,
the Court finds that none of the exceptions, which the Seventh
Circuit has determined sometimes resuscitate deficient
hypotheticals, applies.

Specifically, the Court finds that Plaintiff's attorney
failed to accurately supplement the ALJ's hypothetical.
Moreover, although the ALJ's hypothetical was based upon those
impairments that the ALJ found were supported by the record, this
is meaningless where the ALJ's underlying conclusions were not
supported by substantial evidence. [3] Similarly, it is irrelevant

---

[3] The ALJ noted the absence of limitations recommended by
any doctors in determining Plaintiff's RFC. However, the only
doctor that evaluated Plaintiff's ability to work was Dr.
Gwendolyn White, a non-examining former pediatrician, who
performed Plaintiff's physical RFC assessment. The notations in
Dr. White's report refer to Plaintiff's vision impairments,
ignoring any of Plaintiff's other complaints. Dr. White did not
cite specific clinical findings, observations, or lay evidence to
support her conclusions regarding the lack of exertional,
postural, manipulative or communicative limitations, as required
by the evaluation form. Dr. White merely checked boxes denoting
limitations with virtually no explanation. Reports like this are
"entitled to relatively little weight." *Berrios-Lopez v. SHHS,*

that the VE likely reviewed the record prior to the hearing and was present at Plaintiff's hearing, because the record evidence was inadequate to make an informed decision regarding Plaintiff's RFC. Therefore, the case must be remanded to the ALJ.

Upon remand, the Court further advises that the ALJ obtain additional evidence regarding Plaintiff's ability to work a full day. Both Plaintiff and her husband testified that Plaintiff was capable of working, at most, four hours each day. Admittedly, there is minimal medical evidence supporting such a restriction. However, Plaintiff testified that her ability to work even four hours a day declined over time, and Mr. Brasel's testimony revealed that Plaintiff made fewer and fewer contributions to his business and home over the years. The ALJ expressly stated in his opinion that he found the testimony of Plaintiff and Mr. Brasel to be credible, and he did not offer any explanation for rejecting their testimony on this point.

The ALJ's hypothetical to the VE, and the VE's response to that hypothetical, both presumed that Plaintiff could work a full day. Once again, counsel for Plaintiff failed to highlight this oversight. Nevertheless, the ALJ's failure to address evidence indicating that Plaintiff was unable to work a full day in forming his hypothetical was a significant omission and warrants redress on remand.

---

951 F.2d 427, 431 (1st Cir. 1991.)

## B. On Remand, the ALJ Should Discuss Evidence Favoring the Plaintiff's Disability Determination

In his decision, the ALJ contends that there are no medical records, prior to 1990, substantiating certain of Plaintiff's complaints. Contrary to the ALJ's remarks, although the medical records are not substantial, they do, in fact, exist. For example, Dr. Foody notes in a 1996 medical report that the onset of Plaintiff's pathology for demyelinating eye disease in both eyes was March 1985. (R. at 17.) The ALJ refers to Dr. Foody's report but does not explain why he ignores the noted onset date for demyelinating eye disease. Dr. Foody's report supports Dr. Kammenzind's evaluation of Plaintiff's condition, but the ALJ did not discuss either doctor's report.

In addition, the ALJ overlooked Plaintiff's evidence of medical treatment from May 1983 through September 1985 for back pain. The evidence was submitted by Dr. Cook and was part of Mr. Brasel's testimony. The ALJ pointedly states that there is no evidence of treatment for back pain prior to 1995.

The Court concedes that it is entirely plausible that the existence of these records would have no impact on the ALJ's conclusions. Nevertheless, upon remand, the ALJ should account for these records, which he previously overlooked.

### Conclusion

Applying the standards set forth above to the facts of this case, the Court must conclude that the Commissioner's

determination is not supported by substantial evidence in the record. The Commissioner did not develop a fair and full record and did not adequately articulate his analysis.

Neither the ALJ nor Plaintiff's counsel properly developed the record to include evidence indicating the scope of Plaintiff's exertional impairments. As such, the hypothetical posed to the VE was not based upon substantial evidence, and, similarly, the VE's response to that hypothetical cannot constitute substantial evidence that Plaintiff retained the ability to perform light work. Ultimately, the ALJ's decision may be the same. However, this Court remands the case for further factual development and analysis.

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgement be, and the same hereby is, **GRANTED in part**, consistent with this Opinion.

**IT IS FURTHER ORDERED** that the Commissioner's Motion for Summary Judgment be, and the same hereby is, **DENIED**.

Dated: May 8, 2002        ENTER:


ARLANDER KEYS
United States Magistrate Judge